# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50631

United States Court of Appeals
Fifth Circuit

**FILED**

May 28, 2014

Lyle W. Cayce
Clerk

CYNTHIA CARDENAS, Individually, and as Next Friend for A.C. and N.C.;
ANDRES CARDENAS; SABINA CARDENAS,

Plaintiffs – Appellants

v.

LEE COUNTY, TEXAS,

Defendant – Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-85

Before JOLLY, GARZA, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Cynthia Cardenas appeals the district court's granting of summary judgment to the defendant, Lee County (the "County"), on Cardenas's 42 U.S.C. § 1983 and state wrongful death claims. Cardenas alleges that the County violated the constitutional rights of her deceased husband, Cesar Cardenas ("Cesar"), by either denying him medical care, maintaining a policy of denying medical care to inmates, or by failing to adequately train prison guards in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50631

provision of emergency medical care.  Cardenas also argues that the district court erred in granting summary judgment before the County had produced responsive documents.  Because taking the evidence in the light most favorable to Cardenas, she cannot prove her claims, we AFFIRM the judgment of the district court.

I.

Cesar was placed in the custody of the Lee County Sheriff's Office in November 2011.  On December 3, he became ill and was transported to a nearby hospital, but was subsequently returned to the jail.  Two days later, Cesar fell ill again.  A prison officer took Cesar's blood pressure and pulse, and both were elevated.  The officer also noted that Cesar was shaking.  No further action was taken at that time, except that the incoming prison officers were told to keep an eye on Cesar's condition.  At some point during the night, the prison officers were informed by Cesar's cellmates that Cesar had vomited a white substance into the cell toilet.  The officials checked on Cesar again near midnight, but they were unable to wake Cesar and thus did not check his vital signs.  Cesar was not checked on again until the next morning, around 6:00 a.m., when Cesar was found dead in his cell.[1]  An autopsy revealed that Cesar had died of multiple drug toxicity.

Cardenas filed suit against the County on behalf of herself and her minor children.  In the district court, Cardenas, in support of her claim that the County had a policy and practice of denying medical care to its prisoners, introduced the affidavit of another inmate, Michael Sanders.  In his affidavit, Sanders indicated that he had been an inmate in the Lee County jail.  During his time in custody, he became ill, and a prison officer summoned an

---

[1] As noted by the district court, the County argues that the prison officials visually checked on Cesar throughout the night.  Consistent with taking the facts in the light most favorable to Cardenas at the summary judgment stage, we ignore this argument.

No. 13-50631

ambulance to take Sanders to the hospital. When the ambulance arrived, Sanders states that Lee County Sheriff Rodney Meyer ("Sheriff Meyer") turned it away because he believed that Sanders was faking his illness. Cardenas argues that these two incidents—the turning away of the ambulance for Sanders and the failure to summon medical care for Cesar—are evidence of a policy of denying medical care to inmates.

The district court granted summary judgment to the County. The district court held that, even taking Sanders's affidavit as completely true, these two incidents could not support Cardenas's claim of a County policy because they were isolated incidents as evidenced by both Sanders and Cesar receiving medical care during their time in the County jail. The district court held that the failure to get timely medical care in these cases was a failure in judgment as opposed to a policy of denying medical care. The district court also rejected Cardenas's failure-to-train theory. After recognizing that the County's medical care training was inadequate, the district court nonetheless held that under the high standard the Supreme Court has imposed for failure-to-train liability, Cardenas could not recover. The district court accordingly granted summary judgment to the County and entered final judgment in the County's favor.

Cardenas now appeals arguing that the district court was incorrect on the merits, and that the district court should not have granted summary judgment because the County had failed to produce records related to the Sanders incident despite Cardenas's request for their production.

## II.

We review a grant of summary judgment de novo. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). Summary judgment is improper if there is a genuine dispute of material fact such that a reasonable jury could return a verdict for the nonmoving party. *Id.* At the summary

3

No. 13-50631

judgment stage, we view the evidence in the light most favorable to the nonmoving party—Cardenas. *Id*; *see also Tolan v. Cotton,* 134 S. Ct. 1861, 1863 (2014) (per curiam) ("[Courts must] adhere to the axiom that in ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'").

Cardenas attempts to demonstrate a § 1983 violation by the County in three alternative ways: (1) showing that prison officials were deliberately indifferent to Cesar's medical needs in this single individual case; (2) demonstrating that the County had a policy or custom of denying medical care to prisoners; or (3) demonstrating that the County's training for prison officials was inadequate. To establish liability for the County, Cardenas must satisfy the "high standard of proof" that this court requires for imposing liability on a municipality. *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). We now turn to address whether Cardenas has satisfied this standard with respect to any of these theories.

A.

Cardenas first argues that the County was deliberately indifferent to Cesar's medical needs specifically on the night he died, and that the County directly, by this single incident, violated Cesar's constitutional rights. *See Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) ("[P]retrial detainees have a constitutional right . . . not to have their serious medical needs met with deliberate indifference on the part of the confining officials."). To establish deliberate indifference against a County or other municipality based on a single episode, Cardenas must show that a prison officer was aware of facts from which an inference of substantial risk of harm could be drawn, the officer drew that inference, and the officer subjectively intended that harm occur. *Id.* at 458–59.

4

No. 13-50631

Before the district court, Cardenas conceded that no prison officer had subjective knowledge of a substantial risk of harm to Cesar. Specifically, Cardenas "[did] not deny that a jail or detention official did not have subjective knowledge of the substantial risk of serious harm to [Cesar]. . . ." Accordingly, Cardenas cannot establish deliberate indifference based on a single episode; the district court was correct to dismiss Cardenas's claims based on this theory.

### B.

Cardenas next attempts to show that Cesar's death was a result of a County policy of denying medical care to inmates. This policy can be an (1) express policy of violating the Constitution, (2) a widespread practice or custom—even if that custom has not received formal approval by an official decision-making body—or (3) a decision by an individual with express policy-making authority. *Monell v. Dept. of Social Services of N.Y.*, 436 U.S. 658, 690–91 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986). We now look at each of these possibilities.

### 1.

It is immediately clear that Cardenas cannot establish that the County has an express policy of refusing medical care to inmates. Just the opposite is true. The County policy is that "[e]mergency medical care is available twenty-four (24) hours a day." If an emergency exists, the prisoner is to be transported to a local hospital via ambulance. Thus, Cardenas cannot establish that the County has an express policy of denying medical care to inmates.

### 2.

Cardenas next argues that, despite the express policy to the contrary, the County has a widespread custom amounting to a policy of denying medical care to inmates. *Monell*, 436 U.S. at 690–91 (recognizing that a municipality may be liable for deprivations caused by a government custom "even though such a custom has not received formal approval through the body's official

5

No. 13-50631

decisionmaking channels"). For support, Cardenas points to the circumstances surrounding Cesar's death, as well as the affidavit of Sanders.

In his affidavit, Sanders states that while he was in the custody of the County, he became ill. After one prison officer summoned an ambulance, Sheriff Meyer turned the ambulance away. As a result, Sanders was not taken to the hospital until the following day; he required emergency surgery and a lengthy hospital stay. Cardenas argues that this denial of timely medical care to Sanders, combined with the similar circumstances surrounding Cesar's death—i.e. the failure to procure timely medical care for Cesar—indicate that the County has a custom or policy of denying medical care to inmates.

Even taking all of Cardenas's claims as true, there is not sufficient evidence to demonstrate that the County had a custom of denying medical care. The undisputed facts indicate the opposite. Both Sanders and Cesar *did* receive medical care during their time in County custody. Sanders was taken to the hospital the day after the ambulance was turned away by Sheriff Meyer. Cesar was taken to the hospital several days prior to his death. Thus, in both cases, the prisoners received medical care. That they received it either too early or too late may indicate, as the district court suggested, a failure in judgment by the prison officials. These two isolated failures in judgment cannot, however, establish a custom or policy of denying medical care to inmates. *See, e.g., Arshad v. Congemi*, No. 08-30061, 2009 WL 585633, *8 (5th Cir. Mar. 9, 2009) (unpublished) (dismissing *Monell* claim for failure to show a "custom" where plaintiffs "point to only one similar previous incident").

3.

Cardenas next argues that Cesar's constitutional deprivation was caused by the decision of an individual with express policy-making authority: Sheriff Meyer. *See Pembaur*, 475 U.S. at 481–83. Cardenas to some extent conflates this theory with the custom or policy theory from above. Cardenas alleges that

No. 13-50631

by turning the ambulance away in Sanders's case, Sheriff Meyer created a policy or custom of denying medical care to inmates. As discussed above, the two isolated incidents are not enough to establish a policy or custom. Similarly, Cardenas's argument on this theory fails because Cardenas does not allege that Sheriff Meyer himself had any part in the denial of medical care to Cesar.

Here, taking Cardenas's allegations as true, Sheriff Meyer made a decision in Sanders's case to take a particular course of action. And although, under *Pembaur*, that could be interpreted as "an act of official government policy" in Sanders's case, it does not support Cardenas's claim because Sheriff Meyer was not involved in Cesar's case. *See Thompson*, 245 F.3d at 459 (recognizing that a sheriff "not personally involved in the acts that deprived the plaintiff of his constitutional rights" is liable under § 1983 only under a failure-to-train theory). Thus, Cardenas cannot establish that Cesar's alleged constitutional injury was caused by an official with policy-making authority.

C.

Finally, Cardenas argues that she can recover under § 1983 based on the County's inadequate training of prison officials. In short, Cardenas alleges that the County provided inadequate training in how to deal with medical emergencies, and this failure led to Cesar's death.

In determining municipal liability based on inadequate training, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Establishing municipal liability for a failure to train is a difficult task. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). Cardenas must establish that the County's failure to train was deliberately indifferent to the constitutional rights of inmates. *Id*.

7

No. 13-50631

1.

Establishing deliberate indifference generally requires a showing that the municipality failed to change its training methods in the face of several incidents in which the training methods caused constitutional deprivations. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *Connick*, 131 S. Ct. at 1360 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failures to train.").

Here, Cardenas again relies on the cases of Cesar and Sanders and alleges that these two occurrences demonstrate the inadequacy of the County's training methods.    Cardenas cannot clear the high bar that exists for establishing a failure to train by pointing only to these two claims.   These claims undoubtedly represent a small proportion of the inmates that the County has held over the relevant time period.   Additionally, these events are contrasted by the times that these exact two inmates did receive medical care while in County custody.   Thus, these facts cannot establish the "pattern of similar constitutional violations by untrained employees" that is necessary to demonstrate deliberate indifference on the part of the County.   *Connick*, 131 S. Ct. at 1360.

2.

It is also possible, in limited circumstances, to establish a failure-to-train claim based on a single incident.  *See id.* at 1361 (recognizing that the Court has left open the possibility of failure-to-train liability based on a single incident when the unconstitutional consequences of the failure are "patently obvious").   In *Harris*, the Supreme Court provided an example of a training failure that would be "so obvious" to support liability based on a single incident:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.   The

city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

489 U.S. at 390 & n.10 (internal citation omitted). The Supreme Court has subsequently made clear that this language applies to a narrow set of cases. *Connick*, 131 S. Ct. at 1366 ("We conclude that this case does not fall within the narrow range of 'single-incident' liability. . . .").

The district court stated that the County's training "is inadequate by any reasonable measure." Although the County disputes this characterization, we see no need to pass judgment on the County's training program. Even assuming that the training is inadequate, a constitutional violation via inadequate training was not "so obvious" as to establish liability. Cardenas needed to demonstrate that, absent further training, it was "highly predictable" that prison officials would be "confounded" by decisions about whether to summon emergency medical care. *See id.* at 1365. Cardenas had to demonstrate that this was "so predictable that failing to train the [prison officials] amounted to *conscious disregard*" for a prisoner's right to medical care. *Id.* (emphasis in original). Cardenas did not satisfy this burden.

In sum, the Supreme Court has made clear that failure-to-train liability for municipalities is only appropriate in the most egregiously apparent cases. Even accepting that the district court was correct that the County's training was inadequate, this case does not fit within that narrow band of circumstances where a failure to train is so obvious as to result in liability. [2]

---

[2] Cardenas also brought a state law survivorship action. This allows for an individual's § 1983 claim to survive to his heirs. As we have held that there is no viable § 1983 claim, the district court was correct in dismissing the state law survivorship claim.

III.

Finally, Cardenas argues that the district court erred in granting summary judgment to the County in the light of the County's failure to produce responsive documents related to Sanders's incarceration and affidavit. The district court rejected this request for production as well as Cardenas's motion for sanctions for spoliation of evidence. We review this decision on a discovery motion for abuse of discretion. *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208 (5th Cir. 1992).

We hold that the district court did not abuse its discretion in refusing to sanction the County and in granting summary judgment despite Cardenas's discovery complaints. Cardenas has not shown that she was prejudiced by any failure to produce evidence. *See Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). At this stage in the proceedings, we take Sanders's affidavit as wholly true, so it is unclear what would be added to Cardenas's case by evidence that merely affirms the affidavit. Thus, we cannot say that the district court abused its discretion in denying this discovery motion. *See Greer v. Bramhall*, 77 F. App'x 254, 255 (5th Cir. 2003) (unpublished) ("As Greer suffered no prejudice, Greer has not shown that the district court abused its discretion . . . .").

IV.

In this opinion, we hold that Cardenas has not established that the County violated § 1983. Specifically, the evidence, taken in the light most favorable to Cardenas, does not create an issue of material fact as to whether the County was deliberately indifferent to Cesar's medical needs, whether Cesar's deprivation was a result of a County policy, or whether the deprivation resulted from inadequate training. Similarly, the district court did not abuse its discretion in denying Cardenas's discovery motion presented in Cardenas's

No. 13-50631

response to the County's motion for summary judgment.  The judgment of the district court is therefore

AFFIRMED.