# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2017

Lyle W. Cayce
Clerk

—————

No. 16-20003

—————

MARIE A. HICKS-FIELDS, individually and as representative of the estate of Norman F. Hicks, Sr., Deceased; EVANGELINE E. CAMPBELL, individually and as representative of the estate of Norman F. Hicks, Sr., Deceased; JASON HICKS, individually and as representative of the estate of Norman F. Hicks, Sr., Deceased; NORMAN F. HICKS, JR., individually and as representative of the estate of Norman F. Hicks, Sr., Deceased,

   Plaintiffs - Appellants

v.

HARRIS COUNTY, TEXAS,

   Defendant - Appellee

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

While being temporarily segregated in an attorney visitation booth, Norman F. Hicks, Sr., punched Harris County Detention Officer Christopher Pool in the face, prompting a responsive punch from Pool. As Hicks fell down, he struck his head on a concrete ledge in the booth. There were two other officers on the scene, one of whom looked through a window in the door and saw Hicks starting to lift himself off the ground. They left Hicks there, who

some fifteen minutes later was found without respiration or a pulse. Jail clinic staff were summoned to render aid, and while Hicks recovered a pulse, he slipped into a coma from which he did not recover. His survivors appeal summary judgment regarding any liability of the county for the officers' actions. We affirm.

I.

Norman F. Hicks, Sr., was arrested in Oklahoma and extradited to Texas, where he was booked into the Harris County Jail. Jail staff knew Hicks had a history of schizophrenia, and Harris County detention officers requested multiple psychiatric evaluations based on Hicks' behavior. Nine days after his arrival, Hicks was involved in an altercation with another inmate and was placed in an attorney booth as a temporary holding cell, a common practice at the jail. After more than two hours, Harris County Corrections Officers Joseph Jameson, Christopher Taylor, and Christopher Pool noticed that Hicks had urinated and defecated in the booth and transferred him to a different booth.

On observing Hicks—now in the new booth—raise a plastic chair above his head, Jameson asked Hicks to push out the chair and Hicks' shoes, which Hicks did. He also threw out his shirt, soiled with feces, which struck Pool in the chest and hands. Accounts differ as to what happened next. Jameson says that Pool stepped into the booth to place Hicks' shirt inside. Taylor says that Pool caught the shirt, yelled a profanity, and threw the shirt back into the booth. According to both accounts, 72 year-old Hicks punched Pool in the mouth. The 23 year-old corrections officer responded with a counter-punch to Hicks' face. As Hicks fell backwards into the booth, his head struck a concrete ledge. Jameson then closed the booth door.

Taylor stated that he looked through the window, saw no blood on Hicks or anywhere in the booth, and saw Hicks pushing himself up and shaking his

No. 16-20003

head. Jail protocol required that inmates receive medical attention following a use-of-force incident, but no assistance was summoned until Sergeant Steven Wichkoski came by to check on Hicks fifteen minutes later. Finding Hicks lying motionless on the floor, he called for prison clinic staff. Exhibiting no respiration nor pulse, Hicks was transferred to Ben Taub hospital where he recovered a pulse and survived in a coma until life support was terminated six days later. An autopsy determined that the manner of death was homicide and the cause of death was "[c]omplications of cardiac arrest due to atherosclerotic and hypertensive cardiovascular disease following blunt head trauma with nasal bone fracture."

## II.

Plaintiffs, as heirs of Hicks, brought this suit against Harris County, Pool, and other unnamed deputies in the Harris County State District Court. Plaintiffs' original petition appeared to assert claims under the Texas Tort Claims Act, the Texas Wrongful Death Act, and for "negligent implementation of the policy on securing mentally ill criminal offenders." Four months later, Plaintiffs filed a first amended petition, alleging a cause of action for assault against the individual defendants, restating the claims under the Texas Tort Claims Act and the Texas Wrongful Death Act against Harris County, and containing new claims under 42 U.S.C. § 1983 for violations of the Fifth and Fourteenth Amendment rights to due process of law and for "failure to properly supervise and train its Deputies." Defendants timely removed the case to the federal district court, where it was referred to a magistrate judge.

Fourteen months later, Plaintiffs voluntarily dismissed the unnamed deputies without prejudice and sought leave to file a second amended petition. On March 12, 2014, the court denied the motion for want of good cause.[1] On

---

[1] *See* FED. R. CIV. P. 16(b)(4).

No. 16-20003

February 27, 2015, Defendant Harris County moved for dismissal under Rule 12(b)(6), judgment on the pleadings, and summary judgment on the basis of governmental immunity, the lack of an official policy or custom, and a lack of facts demonstrating specific inadequacies in Harris County's policies or customs. On April 10, 2015, Plaintiffs moved to dismiss their claims against Pool with prejudice, which the court granted. In their response to Harris County's motions, Plaintiffs again asked for leave to amend the complaint. On May 19, 2015, the court again denied leave, stating:

> Discovery concluded months ago. The dispositive and nondispositive motions deadline has passed. The court denied a motion for leave to amend filed by Plaintiffs in February 2014 because Plaintiffs failed to demonstrate good cause as required by Federal Rule of Civil Procedure 16. Plaintiffs' pending motion does nothing to prompt the court to change its ruling.

On November 23, 2015, a magistrate judge entered a memorandum and recommendation to the district court recommending a grant of summary judgment for Harris County. On December 30, 2015, the district court, adopting the memorandum and recommendation, granted summary judgment and entered final judgment for Harris County. Plaintiffs timely appealed.

III.

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court,[2] and a district court's evidentiary rulings for abuse of discretion.[3] Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[4] On summary judgment, a court must view the

---

[2] *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

[3] *Johnson v. Ford Motor Co.*, 988 F.2d 573, 578 (5th Cir. 1993).

[4] FED. R. CIV. P. 56(a).

evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor.[5]

## IV.

Only claims against Harris County are before us. Harris County, as a municipality, may not be held liable under § 1983 on a basis of vicarious liability.[6] Municipalities may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[7]

"As is well established, every *Monell* claim requires 'an underlying constitutional violation.'"[8] The district court found that there are questions of fact as to whether underlying constitutional violations occurred. However, in order to survive summary judgment, Plaintiffs must demonstrate that a question for trial remains as to whether "action pursuant to official municipal policy caused their injury."[9] Put differently, "[t]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[10]

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent

---

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[6] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Kitchen v. Dall. Cty.*, 759 F.3d 468, 476 (5th Cir. 2014).

[7] *Monell*, 436 U.S. at 690.

[8] *Kitchen*, 759 F.3d at 483 (quoting *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013)).

[9] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted) (internal quotation marks omitted).

[10] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

and widespread as to practically have the force of law."[11] Plaintiffs here rely on the third category, attempting to prove official policy through practice. Plaintiffs must therefore demonstrate that there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[12] Plaintiffs must also establish "[a]ctual or constructive knowledge of such custom" by the municipality or the official who had policymaking authority.[13] In this circuit:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.[14]

Plaintiffs' only evidence of this alleged custom consists of the events surrounding Hicks' death, Pool's employee history, and a report regarding conditions in the jail prepared by the United States Department of Justice. Harris County urges us not to consider the DOJ report, arguing that the district court erred in admitting it into evidence; that while the report falls within the public record exception to the hearsay ban, the report is not relevant and is untrustworthy because it was prepared in anticipation of litigation. Plaintiffs counter that the district court erred in determining that the DOJ report is admissible only to show notice rather than as evidence of an

---

[11] *Connick*, 563 U.S. at 61 (citations omitted).

[12] *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984).

[13] *Id.*

[14] *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

underlying pattern of unconstitutional behavior.[15] Without directly responding to Harris County's evidentiary objections, the district court held that the report was admissible to show that "Harris County [was] on notice of a possible pattern of potentially unconstitutional acts at the time preceding the investigation." However, because the report was issued two years before Hicks' death, the district court also ruled that the report was irrelevant to showing a pattern of unconstitutional behavior at that time.

Whether the DOJ report should have been admitted for purposes other than establishing notice under *Monell* is a close question. We afford the district court broad discretion in its evidentiary rulings on relevance.[16] Still, the bar is low—evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[17] Reports of this type may make it at least marginally more likely that patterns of unconstitutional conduct occurred. Hicks' death two years later could lead to the reasonable inference that those patterns—for example, a pattern of unconstitutional excessive force—had not abated.[18]

We also recognize the Seventh Circuit's holding in *Daniel* that these reports, prepared pursuant to the statutory duty of the Department under the Civil Rights of Institutionalized Persons Act, are not untrustworthy as documents prepared in anticipation of litigation.[19] "The mere fact that 'the Attorney General may initiate a lawsuit' against the Jail if a resolution is not otherwise reached to address its unconstitutional conditions does not mean

---

[15] *See Shepherd v. Dall. Cty.*, 591 F.3d 445, 456-58 (5th Cir. 2009).

[16] *United States v. Young*, 655 F.2d 624, 626 (5th Cir. 1981).

[17] *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 425 (5th Cir. 2006) (paraphrasing FED. R. EVID. 401).

[18] *See Shepherd*, 591 F.3d at 456-58 (affirming the district court's admission of a DOJ report into evidence as not unfairly prejudicial under Rule 403).

[19] *Daniel v. Cook Cty.*, 833 F.3d 728, 740-41 (7th Cir. 2016); *see also* 42 U.S.C. § 1997.

that the preliminary investigation was conducted as anticipatory fact-finding for a potential lawsuit. If the law were otherwise, many official investigative findings would be inadmissible."[20] As our sister circuit found, reports of this type may be especially relevant in *Monell* claims, where the plaintiff is burdened with demonstrating a systemic failing—"exactly what the Department of Justice experts were looking for."[21]

But ultimately we need not decide this issue today.[22] For even if the report is some admissible evidence relevant to Plaintiffs' *Monell* claim, more is required: that evidence must be sufficient to demonstrate that a question for trial remains as to whether there existed a "persistent, widespread practice of city officials or employees" that "is so common and well settled as to constitute a custom that fairly represents municipal policy."[23] A successful showing of such a pattern "requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'"[24] "While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired . . . ."[25]

---

[20] *Daniel*, 833 F.3d at 741.

[21] *Id.* at 742. We note that our discussion is limited to the DOJ report's relevance and its possible untrustworthiness as a document prepared in anticipation of litigation. Depending on the nature of the report at issue and the specific circumstances of a particular case, such a report might not withstand scrutiny under other evidentiary rules.

[22] "This court reviews a district court's exclusion of expert testimony for abuse of discretion. But even when this court finds an abuse of discretion, it will not reverse the district court's ruling unless it affected the [complaining] party's 'substantial rights.'" *Moench v. Marquette Transp. Co. Gulf-Inland, L.L.C.*, 838 F.3d 586, 594 (5th Cir. 2016) (citations omitted). Even if erroneous, the partial admission of the DOJ report was harmless to both parties.

[23] *Webster*, 735 F.2d at 841.

[24] *Peterson*, 588 F.3d at 850 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[25] *Estate of Davis*, 406 F.3d at 383.

No. 16-20003

Assuming without deciding that the able district court abused its discretion under Rule 401 in admitting the DOJ report for a limited purpose, Plaintiffs' evidence is insufficient to clear the high bar of *Monell* liability at this summary judgment stage. As an initial matter, many of the constitutional deficiencies discussed in the report are not on all-fours with those complained of by Plaintiffs, such as issues related to medical care for inmates with chronic conditions, medical record-keeping, overcrowding, and sanitation. Two subsections of the DOJ report are on point and relevant to Plaintiffs' constitutional claims in a broad sense, detailing allegedly inadequate mental health care and allegedly excessive uses of force. The report helpfully provides examples of these broad themes to illustrate with greater specificity the unconstitutional patterns identified by DOJ experts. However, these specific examples do not resemble—with sufficient similarity—the constitutional violations alleged by Plaintiffs so as to establish the required pattern of that unconstitutional conduct. The scant additional evidence offered by Plaintiffs—such as Pool's employee history—fails to cure these deficiencies and render the evidence as a whole sufficient. Plaintiffs' allegations also must be viewed against the backdrop of a major jail facility that, at the time of DOJ's investigation, housed 9,400 detainees, approximately 2,000 of which were receiving some form of psychotropic medication.

In sum, even with the DOJ report, Plaintiffs have not met their evidentiary burden of showing a genuine dispute of material fact as to the existence of a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[26] Quite simply, under our precedent, Plaintiffs have not

---

[26] *Webster*, 735 F.2d at 841.

No. 16-20003

produced sufficient evidence[27] of similar acts[28] to move to trial. To hold that this evidence is sufficient to establish an official policy of Harris County "would be effectively to hold the [County] liable on the theory of respondeat superior, which is expressly prohibited by *Monell*."[29]

## V.

Plaintiffs also appeal the district court's grant of summary judgment on the failure-to-train claims. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."[30] We have held that:

> [T]o succeed on a *Monell* claim arising from a municipality's failure to adopt an adequate training policy, a plaintiff must demonstrate that: "(1) [the municipality's] training policy procedures were inadequate, (2) [the municipality] was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused [the constitutional violation]."[31]

In assessing whether a training policy and procedure is inadequate, we look to whether the program "enable[s] officers to respond properly to the usual and recurring situations with which they must deal."[32] Plaintiffs must demonstrate

---

[27] *See Peterson*, 588 F.3d at 850 ("Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" (quoting *Webster*, 735 F.2d at 842)).

[28] *See Peterson*, 588 F.3d at 851 ("A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

[29] *Peterson*, 588 F.3d at 852.

[30] *Connick*, 563 U.S. at 61.

[31] *Kitchen*, 759 F.3d at 484 (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)); *accord Benavides v. Cty. Of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)).

[32] *Benavides*, 955 F.2d at 973 (quoting *City of Canton*, 489 U.S. at 391) (internal quotation marks omitted).

that the highly predictable consequence of not training is that the asserted injury would occur.[33] While it may in theory be possible to establish the inadequacy of a training program with a single incident,[34] "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."[35]

Plaintiffs allege several training shortcomings, two of which come closer to stating a viable claim: (1) that officers were not properly trained in the use-of-force and (2) that officers were not properly trained in the rendition of medical aid. Again, Plaintiffs primarily rely on the DOJ report as evidence of training deficiencies. But the allegations of the DOJ report are here weak evidence, at best, of a failure to train. Regarding excessive force, the Department's criticisms largely center on improper training regarding restraining prisoners and cell extraction techniques, neither of which are directly at issue here. As for medical aid training, Plaintiffs cite to page twenty-three of the report, which states that "[t]he Jail should increase staff training to ensure that staff is prepared to implement emergency procedures and operate emergency equipment [in] the event of an emergency." The quoted language is from a section labeled "Sanitation and Life Safety" and appears to address training in the use of fire safety equipment. Plaintiffs have failed to produce competent summary judgment evidence of Harris County's failure to train regarding responses to assaults by inmates and medical aid following a response incident.

---

[33] *Peterson*, 588 F.3d at 849.

[34] *Cardenas v. Lee Cty.*, 569 F. App'x 252, 257-58 (5th Cir. 2014) (unpublished) (quoting *City of Canton*, 489 U.S. at 390). The example the Court gave in *City of Canton* was a police force arming officers but failing to train them in the use of deadly force.

[35] *City of Canton*, 489 U.S. at 391.

No. 16-20003

## VI.

Plaintiffs argue in the alternative that the magistrate judge abused her discretion by not granting leave to amend because Plaintiffs' current counsel was not the counsel of record when the initial pleadings were filed. In denying leave to amend, the court found that "although Plaintiffs had retained new counsel of record, the counsel entered appearances well before the pleading amendment deadline of December 6, 2013." Plaintiffs argue that they did not delay in seeking leave to amend in bad faith, but good faith is not here good cause. The magistrate judge did not abuse her discretion in denying leave to amend after the amendment deadline.

**\*\*\*\***

We affirm the grant of summary judgment rejecting all claims against Harris County.