# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2021

Lyle W. Cayce
Clerk

No. 20-10568

John Barto Clark,

*Plaintiff—Appellant*,

*versus*

Robert Clint Thompson; City of Burleson, Texas; Louis
Michael Giddings,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2126

Before Jones, Clement and Graves, *Circuit Judges*.

Per Curiam:*

John Clark alleged that Officers Robert Thompson and Louis
Giddings of the Burleson Police Department took him into custody or
participated in taking him into custody for mental health evaluations without
probable cause on two separate occasions. The district court dismissed

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-10568

Clark's claims, holding that his allegations did not show that Thompson and Giddings lacked probable cause, and Clark appealed. We AFFIRM.

FACTS AND PROCEEDINGS

Clark alleges that he was arrested and transported to a hospital for mental health evaluations on two occasions, both without probable cause. Because the district court dismissed pursuant to Rule 12(b)(6), at which stage Clark's factual allegations must be presumed to be true, the factual allegations that follow are taken from Clark's First Amended Complaint.

Clark lives in Burleson, Texas, which borders Fort Worth. On September 6, 2017, while Clark was staying in a hotel room in Fort Worth, Thompson, Giddings, and a number of Fort Worth police officers entered his hotel room without a warrant. They searched his belongings and found pills, which Clark identified for the officers. The Fort Worth officers informed Clark that they had been told by Thompson that Clark had threatened to commit suicide, so they transported Clark to John Peter Smith Hospital for evaluation. He was released the next day.

On October 10, 2017, Thompson and Giddings allegedly entered Clark's home without a warrant and found Clark in his bedroom. Thompson claimed that "Clark had threatened that he was suicidal." He searched Clark's room and again located pills. Thompson claimed to have "information that Clark had swallowed a handful of pills." Although Clark allegedly clarified that he had taken only the prescribed amount of medication, Thompson once again transported him to John Peter Smith Hospital for evaluation. Giddings was allegedly present and helped Thompson to seize and transport Clark. Clark was again released the following day.

Clark alleges that both arrests were orchestrated by his (then) spouse, Christi Clark, who was planning to divorce him. He alleges that she owned a

2

hair salon frequented by Thompson and Giddings, and had developed personal and—allegedly—intimate relationships with both officers. Because Christi Clark did not want to share custody of their young son, she allegedly devised a scheme to cause Clark to appear mentally unfit to have custody by manipulating the Burleson Police Department into detaining Clark for involuntary mental health evaluations. She allegedly used her relationships with Thompson and Giddings to accomplish this scheme.

Following unsuccessful efforts to criminally charge Thompson and Giddings for their actions and to file complaints with their supervisors, Clark brought this lawsuit in the Northern District of Texas under 42 U.S.C. § 1983 against Thompson, Giddings, and the City of Burleson. He alleged causes of action against the officers for false arrest and excessive force. He also alleged that the City had adopted a policy of systematically permitting its officers to violate citizens' constitutional rights on behalf of friends and romantic partners and that it had failed to adequately train its officers. Clark pointed to fifty-five administrative complaints and twenty-seven Internal Affairs complaints and the failure of the City to take effective action against Thompson and Giddings (or Christi Clark) as evidence that the custom was so widespread as to constitute an unofficial policy.

The City and officers filed separate motions to dismiss under Rule 12(b)(6) for failure to state a claim, with the officers invoking qualified immunity. The district court granted the motions, finding that Giddings and Thompson had probable cause to apprehend Clark for mental health evaluations under the Texas public health statute. *See* Tex. Health & Safety Code § 573.001. The district court held that Clark had failed to allege any injury, so his excessive force claim must be dismissed. Finally, because Clark had not properly alleged a policy or custom, nor any facts regarding failure to train beyond "boilerplate accusations devoid of any factual specificity," the court dismissed his claims against the City.

No. 20-10568

Clark timely appealed, arguing that the district court had assumed facts not alleged in his complaint to conclude that the officers had probable cause to apprehend him. He also argues that his allegations against the City were sufficient to unlock the doors to discovery so that he could provide a more fulsome showing of a custom of permitting officers to do unconstitutional favors for friends and romantic partners. Clark does not, however, brief his dismissed excessive force claim in any way. As such, we assume that he does not appeal the district court's dismissal of this claim.[1]

## STANDARD OF REVIEW

"We review a district court's order granting a motion to dismiss for failure to state a claim" under Rule 12(b)(6) de novo, viewing all "well-pleaded facts in the light most favorable to the nonmoving party." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020). Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[1] If Clark intended to appeal as to all claims, then his failure to brief instead constitutes a waiver of this issue. *See Hous. Pro. Towing Ass'n v. City of Hous.*, 812 F.3d 443, 446 n.2 (5th Cir. 2016); FED. R. APP. P. 28(a)(8)(A).

'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## DISCUSSION

Clark argues on appeal that the district court erred in accepting defendants' claim that the officers had received a report that Clark was suicidal. Instead, Clark argues, he had only alleged in his complaint that the officers *claimed* to have received such a report—Clark never alleged that they actually *had* received a report that he was suicidal. Because our factual universe at the pleading stage "is bounded by the four corners of the complaint," *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) (en banc), Clark argues that this factual leap was an error sufficient to require reversal. Furthermore, Clark argues that he had adequately alleged a total of eighty-two complaints against the City, at least some of which were likely to be factually similar to his own situation, and which would show a custom of such magnitude as to constitute a City policy for purposes of municipal liability.

The defendants respond (1) that the officers had probable cause to detain Clark, (2) that—even if his rights had been violated—he has not alleged any facts to show that a custom or policy of the City caused the constitutional violation, and (3) that, regardless of whether there was probable cause, claims against Giddings are barred by the statute of limitations.

### A.

We begin by addressing Giddings's statute of limitations argument. Clark's original complaint named only Thompson and the City. Clark first named Giddings as a defendant in his First Amended Complaint, filed on October 29, 2019—more than two years after the second of the two incidents. "Because there is no federal statute of limitations for § 1983 claims, district courts use the forum state's personal injury limitations period," *Moore v.*

No. 20-10568

*McDonald*, 30 F.3d 616, 620 (5th Cir. 1994), which, in Texas, is two years, TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Thus, Giddings argues, Clark's claims against him are time-barred.

The district court did not address this argument, and Clark argues that we should decline to do so as well. However, we "may affirm a district court's order dismissing a claim under Rule 12(b)(6) 'on any basis supported by the record,'" so long as the grounds for dismissal were fairly raised below. *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015) (quoting *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013)); *see also Bhandari v. Maverick Tube*, 763 F. App'x 359, 361 n.1 (5th Cir. 2019) (per curiam) ("[W]e may . . . affirm on any ground supported by the record and presented by the parties below."). Giddings raised his statute of limitations argument below, and Clark had the opportunity to respond (and did so). Clark's argument to the district court, that Giddings knew or should have known that he could be sued based solely on his allegedly unlawful conduct, is meritless.

Federal Rule of Civil Procedure 15(c) requires that a party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." The purpose of the rule is to permit a plaintiff who was merely mistaken about a party's identity "to correct a formal defect such as a misnomer or misidentification" where it would not cause injustice to the substituted defendant. FED. R. CIV. P. 15(c)(1) advisory committee's note to the 1991 amendment. Where there is no mistake, such as where a "John Doe" is named because the actual identity of the intended defendant is unknown, "relation back should not be allowed." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998).

No. 20-10568

Here, Clark did not even bother to name a "John Doe" in Giddings's place—he simply declined to sue the second officer whom he claims was present during the two incidents until after the two-year statute of limitations had elapsed. A plaintiff may not sit on his claims beyond the statute of limitations, and then argue that the unlawfulness of the proposed defendant's actions is sufficient to overcome the defendant's interest in repose (as codified by the legislature's statute of limitations). Giddings's statute of limitations defense is enough for us to affirm the district court's dismissal of all claims against him; we need not examine his alleged conduct any further.

B.

We turn next to Clark's claims against the City. As a municipal entity, the City "cannot be held liable under § 1983 on a *respondeat superior* theory," but can be liable if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, a plaintiff seeking to hold a city liable "must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Hicks-Field v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Clark relies on the "custom" theory to show a policy for which the City might be liable—that is, he alleges that the City, as a matter of routine custom, permitted its police officers to violate citizens' constitutional rights so as to do favors for friends and romantic partners.

7

(1)

Clark's evidence of a custom consists of fifty-five administrative complaints and twenty-seven Internal Affairs complaints lodged against the City of Burleson Police Department over the last ten years. Although he refers to eighty-two complaints, it is unclear whether any of the Internal Affairs complaints duplicate or derive from the administrative complaints, so the true total number of complaints over the ten-year period is uncertain. Clark avers that he is confident discovery will produce, from among these (up to) eighty-two complaints, a sufficient number of stories like his own to demonstrate a pattern. He also claims that the City police department is small enough that this number of complaints is alarming.

Clark claims to show a pattern of unconstitutional conduct done on behalf of friends and romantic partners through the raw number of complaints against the police force. But "[a] successful showing of such a pattern 'requires similarity and specificity; prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Hicks-Field*, 860 F.3d at 810 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). Clark does not allege facts that would permit a court to plausibly infer that even a single one of the prior complaints had anything to do with officers doing favors for friends and romantic partners, with wrongful arrests, or with any other aspect of his claim that could go to a pattern or practice sufficient to constitute a custom.

Clark also alleges that, following his own arrests, he sought to file a criminal complaint against the arresting officers, to speak to the police chief, and to file a complaint with Internal Affairs, but he was frustrated at every turn. Clark's allegations include a sergeant who was allegedly unprofessional

No. 20-10568

towards him, two cancelled meetings,[2] and Clark's own loss of faith in the Internal Affairs division of the Burleson Police Department (leading to him declining to follow up when Internal Affairs reached back out to him). Clark argues that this evidences a culture that reflects a custom of permitting constitutional violations for the benefit of officers' friends and romantic partners. Although these allegations might evidence a culture that permits unprofessional conduct, they do not include any facts that would permit a court to infer an unconstitutional custom. They do not show that other complaints have been mishandled or other constitutional violations permitted. Even when combined with Clark's statistical claims, "I was treated unprofessionally" plus "eighty-two generic complaints" does not equal facts that plausibly show a single comparable incident that would support an inference of a *specific* custom of violating constitutional rights. *See Hicks-Field*, 860 F.3d at 810.

Ultimately, Clark alleges no facts other than those of his own case plus speculation and conclusory allegations in support of a custom of doing favors that involve constitutional violations. "[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622 (quoting *Connick*, 563 U.S. at 61); *see also Mathews v. Bowie Cnty.*, 600 F. App'x 933, 934 (5th Cir. 2015) (per curiam) ("[W]e have consistently held, as is the case here, that '[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy.'" (quoting *Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir.1992))).

---

[2] Clark concedes that one of the officers who cancelled a meeting with Clark (a captain in Internal Affairs) reached back out to follow up, but he claims by that time he felt he "could no longer trust[ ] the integrity of even the Internal Affairs division . . . ."

No. 20-10568

(2)

To show a policy by way of custom, a plaintiff "must also establish '[a]ctual or constructive knowledge of such custom' by the municipality or the official who had policymaking authority." *Hicks-Field*, 860 F.3d at 808 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)).

> In this circuit: "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity."

*Id.* at 808–09 (quoting *Bennet v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). Clark fails to allege any facts that would give rise to an inference that any City policymaker had actual knowledge of an unconstitutional custom.

We address this issue solely because Clark alleges "on information and belief" that the policymaker had knowledge of the custom; he did the same when he alleged that some of the eighty-two complaints included facts similar to his own. Clark is correct that a plaintiff may use "information and belief" to allege facts that are peculiarly in the possession of an opposing party. *See Innova Hosp.*, 892 F.3d at 730. However, a plaintiff needs to exercise reasonable due diligence and provide some factual basis for his allegations that would "raise a reasonable expectation that discovery will reveal evidence" that defendants engaged in unlawful conduct. *Twombly*, 550 U.S. at 556; *Innova Hosp.*, 892 F.3d at 730.

In *Innova Hospital*, the plaintiffs could not allege specific contractual language that had been violated because they did not have access to specific health plans for numerous patients. However, they could allege industry-

standard language and representative language from similar contracts. *Id.* at 729–30. It was reasonable to expect that, with discovery, they would be able to provide the exact plan language for the remaining patients, and it would likely show Innova had been underpaid.

Here, Clark has not done his due diligence. He asserts that "publicly available memoranda prepared for and delivered to" city policymakers (whether "the city council, the city administrators, or the Chief of Police"), as well as "non-public documents" related to the incidents described in the eighty-two complaints would show that policymakers had knowledge of a custom of constitutional violations. He does not, however, allege any facts regarding the existence of any specific public memoranda or the actual contents of *any* memoranda (public or non-public). He purports to rely, "on information and belief," on the existence of public documents— but public documents would not be "peculiarly within the possession and control of the defendant." *Id* at 730 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

Similarly, some of the eighty-two complaints may be confidential, but Clark offers no facts that would permit us to reasonably expect discovery to turn up cases like his own. He does not allege that there were "discussions at council meetings" or the sort of "prolonged public discussion or [ ] a high degree of publicity" that this court acknowledged in *Hicks-Field* could indicate actual or constructive knowledge by city policymakers. 860 F.3d at 808–09. Such public discussions or a high degree of publicity about whether the police force was systematically violating citizens' constitutional rights might also provide the sort of context that would make Clark's allegations about eighty-two complaints meaningful. We doubt there is a single police department in the country that has gone a decade without any complaints; alleging "on information and belief" that there may be complaints similar to his own merely because complaints exist is not enough for Clark to state a

plausible claim that a municipal custom caused a constitutional violation. Clark's "complaint invites no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom," or that there are any further incidents that could evince the existence of such a custom. *Peña*, 879 F.3d at 623. As such, he has failed to state a § 1983 claim against the City.[3]

## C.

Finally, we consider Clark's claims against Thompson. Clark alleges Thompson searched his hotel room and home, and seized him for mental evaluation with neither a warrant nor probable cause. The parties do not dispute that Clark's apprehension for a mental health evaluation constituted a Fourth Amendment seizure. *See Pena v. Givens*, 637 F. App'x 775, 780 (5th Cir. 2015) (per curiam) ("This Court has held implicitly that a person taken into custody by police officers under Texas Health and Safety Code § 573.001 is seized under the Fourth Amendment." (citing *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012))).

They dispute, however, whether Thompson had probable cause to enter Clark's home and seize him. "The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of *no probable cause*." *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (emphasis added). If an individual poses a threat to himself, that "may create an

---

[3] The district court also correctly dismissed Clark's failure to train claim against the City. A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick*, 563 U.S. at 61, and Clark's failure to train claim adds no more to his overall pleading than a bare assertion that the custom of constitutional violations—which he failed adequately to plead—also indicates that the City needed to further train its officers against adopting an unconstitutional custom. Just as Clark failed to plead an unconstitutional custom or policy against the City, he also failed to plead that the City inadequately trains its police force against acting on such a custom.

exigency that makes the needs of law enforcement so compelling that a warrantless entry is objectively reasonable under the Fourth Amendment." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1131 (5th Cir. 2014).

We are guided, in part, by Texas law, which permits warrantless apprehension when an officer (1) "has reason to believe and does believe" that a person has a mental illness and "because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained" and (2) the officer "believes that there is no sufficient time to obtain a warrant before taking the person into custody." Tex. Health & Safety Code § 573.001(a). Such a risk may be demonstrated by (1) "the person's behavior" or (2) "evidence of severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty." Tex. Health & Safety Code § 573.001(b). Finally, an officer "may form the belief that the person meets the criteria for apprehension: (1) from a representation of a credible person; or (2) on the basis of the conduct of the apprehended person or the circumstances under which the apprehended person is found." Tex. Health & Safety Code § 573.001(c).

The district court held that the officers acted reasonably because they were responding to a call about Clark being a possible suicide threat and found the pills he was allegedly planning to use to commit suicide. Clark counters in his briefing to this court that "the Officer Appellees had actual knowledge that the charges against Clark were untrue." Neither characterization precisely fits the facts alleged in Clark's First Amended Complaint. Because we must, at this stage, determine whether the officers "are entitled to qualified immunity based on the facts alleged in the complaint, which we must accept as true, drawing all reasonable inferences in favor of" the plaintiff, it will be helpful to recap briefly what was and what was not alleged in Clark's complaint. *Morgan*, 659 F.3d at 401.

Clark argues that the district court erred in concluding that "on both occasions, the Officers were responding to a call about Clark being a suicide threat," because he had alleged only that they *claimed* to be responding to such a call—he had not alleged that they actually were. *Clark v. City of Burleson*, No. 3:19-CV-2126, 2020 WL 635842, at *3 (N.D. Tex. Feb. 11, 2020). Clark alleges that the officers knew his wife because they were patrons of her hair salon. He alleges that she had been planning to file for divorce and did not want to share custody of their son. Allegedly, she had confided to friends that she was scheming to deprive Clark of his custody rights (the friends, apparently, broke her confidences and reported the schemes to Clark) by either murdering Clark or by falsely accusing Clark of physically and sexually abusing her. Clark concludes that "it appears" his wife "deployed a third option"—falsely accusing him of suicidal tendencies to make him appear mentally unfit.

Clark also alleges that, during the Fort Worth incident, the Fort Worth police told Clark that Thompson had reported to them that he had information indicating Clark had threatened to commit suicide. During the second incident, Thompson told Clark directly that he had information Clark had threatened to commit suicide, and specified (after locating a pill bottle) that he "had information that Clark had swallowed a handful of pills."

It's clear the officers had received information of some sort because they knew where to find Clark, including when he was in a hotel rather than staying in his home. So the allegations indicate the officers had received some communication about Clark, allegedly from Clark's wife, that included details like his whereabouts to bolster its reliability. Despite their marital strife, Clark's spouse is nonetheless likely to have at least some personal knowledge of his mental state. The officers were able to corroborate details of the report, such as Clark's location (they knew to find him at the hotel in the first incident, and at his home in the second) and the presence of a pill

bottle that, at least in the second incident, Thompson claimed to have been told Clark was planning to use in his suicide.

The facts Clark has pled are consistent with Thompson having received a detailed call from someone personally familiar with Clark's mental state informing him that Clark was suicidal, when Thompson was already familiar with Clark's difficult marital situation due to Thompson's personal relationship with Christi Clark. This court has acknowledged the impact that marital strife can be expected to have on a person's mental state. *See, e.g.*, *Martinez v. Smith*, No. 99-40286, 1999 WL 1095667 at *1 (5th Cir. 1999) (per curiam) (finding probable cause to investigate under Texas Health and Safety Code where plaintiff "confirmed to the officers that she and her ex-husband had just had a disagreement"). This is information sufficient for Thompson to have "reason to believe" that Clark was mentally ill (suicidal). TEX. HEALTH & SAFETY CODE § 573.001(a)(1). With information that Clark was a suicide risk and had the means to act on it (pills), Thompson could have reasonably believed "there [was] not sufficient time to obtain a warrant before taking [Clark] into custody." TEX. HEALTH & SAFETY CODE § 573.001(a)(2).

The exigency of a credible risk that a person is about to end their life justifies the warrantless entries into Clark's hotel room and home; the corroborating discovery of pills, the purported means by which he was planning to end his life, provides probable cause to detain him. Clark argues to us now that Thompson did not in fact believe that Clark was a suicide risk, but his complaint—to which we are confined—alleges explicitly that Clark has no facts to cast doubt on the veracity of Thompson's belief.

Clark argues on appeal that Thompson and Giddings had formed an agreement with his wife to falsely arrest him, but he made no such allegation in his First Amended Complaint—to the contrary, he conceded that he had

no facts indicating such an agreement. Even if he had, "a conclusory allegation of agreement at some unspecified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557. Clark is correct that, if Thompson and Giddings were actively and knowingly in cahoots with his wife, this would be a different case. But he offers no facts that could make that plausible. Clark provides no factual basis for his claim that his wife had "intimate relationships" with (apparently) both officers; even if he had, it would still provide insufficient cause to infer that she had informed them of the details of her alleged scheme to frame Clark for mental instability.[4]

In *Twombly,* the Supreme Court acknowledged that "parallel conduct was consistent with an unlawful agreement, [but] the Court nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Similarly, Clark's apprehension by officers allegedly involved with his wife does not plausibly suggest an illicit accord because it is not only compatible with, but indeed is more likely explained by, the officers' receipt of a credible report that he was suicidal, unaccompanied by any illicit conspiracy or explanation of the report's falsehood.

It is conceivable that Christi Clark informed the officers of her plan and that they acted on what they knew to be false information. However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Here, "the well-pleaded facts do not permit the

---

[4] Since it is a bare assertion, made "on information and belief," with no facts to indicate how Clark concluded that his former wife was intimately involved with at least 5% of the Burleson Police Department, we also need not treat this allegation as true.

court to infer more than the mere possibility of misconduct," *id.* at 679, which is not enough to show that Thompson acted with "no probable cause," *Brown*, 243 F.3d at 189. Clark has failed to plead a violation of his constitutional rights.

## CONCLUSION

Clark's allegations rest on a great deal of "information and belief." He alleges that the Burleson Police Department has a custom of permitting officers to violate constitutional rights in order to do favors for friends and romantic partners and (admittedly without facts to support the allegation) that his former spouse conspired with Officers Thompson and Giddings to falsely apprehend him on suspicion of suicidal tendencies. Clark insists throughout his argument that discovery will uncover the facts he needs to support his allegations. The Supreme Court has "explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 550 U.S. at 557–58 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)). Clark has failed to allege facts sufficient to proceed to discovery. We cannot allow Clark to embark on an unjustified fishing expedition against the officers or the City to discover facts that might have justified proceeding beyond the Rule 12(b)(6) stage if they had been alleged at the outset.

The district court's dismissal of all claims is AFFIRMED.